IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| **HERSCHEL HINKLE,** | § | |
| Petitioner, | § | |
| | § | |
| **V.** | § | **A-06-CA-956-LY** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

To:     The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 28); Petitioner's response thereto (Document 32); and Respondent's reply (Document 33). Petitioner, proceeding pro se, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 390th Judicial District Court of Travis County, Texas in cause number 3013666, styled The State of Texas v. Herschel Hinkle. Petitioner was charged by indictment with the felony offense of intoxication manslaughter enhanced with two previous felony convictions. The indictment specifically alleged that he used his vehicle as a deadly weapon. Petitioner pleaded guilty before a jury to the offense and true to the enhancement convictions. The issue of the sentence was sent to the jury at the Petitioner's request. Consistent with his admission of guilt, and the trial court's directions, on March 24, 2003, a jury found Petitioner guilty of the charged offense, found both enhancement convictions to be true, and made an affirmative finding that Petitioner's truck was a deadly weapon. After hearing evidence related to sentencing, the jury sentenced Petitioner to life in prison, and a $10,000.00 fine.

Petitioner's conviction was affirmed on appeal, and his petition for discretionary review was refused by the Court of Criminal Appeals. Hinkle v. State, No. 03-03-00361-CR (Tex. App.– Austin, Mar. 11, 2004, pet. ref'd). The Supreme Court denied his petition for writ of certiorari. Hinkle v. Texas, 126 S. Ct. 101 (2005).

Petitioner also challenged his conviction in a state application for habeas corpus relief. Petitioner filed his state application on September 27, 2006. Ex parte Hinkle, Appl. No. 66,281-01 at 30. The Texas Court of Criminal Appeals denied the application on November 15, 2006. Id. at cover.

**B.     Factual Background**

The factual background of this case is fully detailed in Respondent's answer. According to Respondent, Hinkle was released from TDCJ-CID on parole from burglary and DWI convictions on September 20, 2001, with conditions that he not consume alcohol or drive a vehicle. On November 26, 2001, his parole officer requested a warrant for his arrest for violation of the conditions of his parole because Hinkle was arrested on November 10, 2001, for driving while his license was suspended. 3 SF 25-30. Before Petitioner could be arrested, he committed the felony offense of intoxication manslaughter.

The state court records reveal on or about November 29, 2001, at approximately 11:10 p.m. APD Patrol Officer Matthew Verver was running radar monitoring the southbound traffic on IH-35 in south Austin, Travis County, Texas. He clocked a vehicle traveling at 77 miles per hour. 3 SF 34. Officer Verver pursued the vehicle, a Dodge truck, as it traveled South on IH-35. The Dodge was seen driving in a reckless manner, making sudden lane changes and darting between cars. Officer Verver noticed that the other vehicles had to suddenly brake in order to avoid colliding with the Dodge. 3 SF 36, 40. Officer Verver activated his overhead lights[1] and siren and continued the pursuit. Due to the erratic nature of the driving of the Dodge, Officer Verver believed that the driver may have been intoxicated and posed a danger to the other people driving on the highway. 3 SF 36-37, 66. Officer Verver was joined in the pursuit by Officer Matt Forrest. 3 SF 38. The pursuit moved off of IH-35 and west on to Loop 4. The Dodge executed a U-turn and the pursuit proceeded back to IH-35 where it turned northbound on the West Frontage of IH-35. 3 SF 45. The Dodge ran

---

[1] When his lights activated this automatically started Officer Verver's onboard video camera, which taped the rest of the high speed pursuit. 3 SF 42-3, 62 (video, State's Exhibit No. 3, was shown to the jury and reviewed by this Court).

a red light on the frontage road and was clocked traveling at a speed of approximately 90 miles per hour. 3 SF 46. The Dodge moved from the frontage road and onto IH-35 still heading northbound toward Austin. Officer Verver heard Officer Clinton Hunter on his radio stating that he was "setting up." Officer Verver understood that to mean that Officer Hunter was getting prepared to use the sting spike system in an effort to terminate the pursuit in case an opportunity became available. Officer Verver informed Officer Hunter that he and the Dodge were heading toward his location. The Dodge entered the Onion Creek exit without slowing down. At that time Officer Verver lost sight of the vehicle. When Officer Verver crested the hill at Onion Creek he saw that Officer Hunter's vehicle appeared to be severely damaged and then it erupted into flames. Officer Verver exited his vehicle and ran to the burning police unit but Officer Hunter was not inside. Officer Hunter was discovered beneath the Dodge and was motionless. CPR was performed on Officer Hunter who was transported to Brackenridge Hospital by Starflight. Officer Hunter was pronounced dead at approximately 11:59 p.m.

  According to the evidence at the sentencing trial, Hinkle's truck was averaging about 82-miles-an-hour prior to braking, 3 SF 53, and was going 67-miles-an-hour after the brakes were locked up, and at the point of impact. 5 SF 43-6, 57; 6 SF 13. The speed limit for the frontage road was 55-miles-per-hour. 6 SF 14. Hinkle's truck continued moving at 38-miles-an-hour even after impact, and Hunter's patrol car, which was parked at the moment of impact, moved as fast as 31-miles-per-hour after being struck by Hinkle's truck. 5 SF 41-2. Hinkle should have been able to see Hunter's patrol car a full 618 feet prior to when he collided with it. 5 SF 48. Demonstrating the severity of the impact between Hinkle's truck and Hunter's patrol car (and Hunter), a witness testified that the right rear wheel from Hinkle's truck was found 340 feet from the point of impact.

Further, the battery from Officer Hunter's radio was found 470 feet from the point of impact. Hunter's retractable nightstick, which he carried on his belt, was found 400 feet from the point of impact. 5 SF 39.

The Medical Examiner concluded that Clinton Hunter, the Austin police officer killed by Hinkle, died as a result of multiple traumatic injuries when he was on duty as a police officer and was struck by a vehicle which was being pursued by law enforcement. Because of the multiple traumatic injuries, he ruled the death a homicide. 4 SF 186.

Officer B. Mullinix, responded to the scene and took the sole occupant of the Dodge out of the driver's seat and laid him on the ground. He removed the person's wallet which contained a photographic identification that identified the driver as Hinkle Herschel. 4 SF 123-24. Hinkle was taken to Brackenridge Hospital where he was treated for head injuries. While at the hospital, Hinkle's blood was drawn, pursuant to state law, to test for drug or alcohol consumption. 4 SF 36-47,101. His blood alcohol level, approximately two hours after the accident, was 0.27, three-and-one-third times the legal limit for intoxication in Texas. The expert who tested Hinkle's blood stated that "an individual in that range of about .25 to about .35 would be in a stupor type condition. He might even . . . move into a comatose condition." 4 SF 196-200. Hinkle was an alcoholic at the age of 19. 5 SF 183.

Several extraneous offenses were introduced against Hinkle demonstrating his past history of drinking and driving. Lyndon Leuders an APD patrol officer testified that he found Hinkle in his truck passed out with the truck partially blocking traffic on January 16, 1999 on East Ben White Boulevard. He arrested Hinkle for public intoxication. 4 SF 202-206. Further, Gary Christenberry, another APD patrol officer testified that on November 4, 1999, at 2 a.m., he found Hinkle passed out

5

behind the wheel of his truck in the parking lot of a Diamond Shamrock on East Slaughter in Austin. Hinkle was driving with a suspended license and he was placed under arrest for public intoxication. 4 SF 213-20. Daniel Forbes testified to a similar incident that occurred in 1992, but this time, in addition to being arrested for public intoxication and driving with a suspended license, he was also arrested for possession of marijuana. 5 SF 96-100. A similar incident was reported by another APD officer on February 2, 1992. 5 SF 103-106. Hinkle was also previously convicted of a DWI on September 30, 1991, and other DWI's committed on August 25, 1992, April 19, 1997, January 16, 1999, and December 8, 1999. 5 SF 80-83, 85, 108-113, 115-120, 131 (on January 16, 1999, Hinkle was arrested two separate times for DWI and public intoxication), 134. There was also extensive evidence presented with regard to the State's repeated attempts to provide alcohol addiction programs to Hinkle during his probation and parole supervision periods.

**C.      Petitioner's Grounds for Relief**

Petitioner contends he received ineffective assistance of counsel and his conviction was obtained by a plea of guilty which was unlawfully induced, not made voluntarily or made without an understanding of the nature of the charge and the consequences of the plea. Petitioner explains that shortly before trial his attorney told him he had no defense prepared to defend Petitioner against the offense alleged in the indictment. According to Petitioner, counsel persuaded him to plead guilty to the offense and to have the jury assess his punishment. Petitioner claims he was not advised by trial counsel, the trial court or the prosecutor that his plea of guilty would require an affirmative finding of use of a deadly weapon. Petitioner explains the deadly weapon finding requires him to serve one-half of his sentence or 30 years in prison prior to becoming eligible for consideration for parole. Petitioner maintains he would not have pleaded guilty had trial counsel prepared a defense

or if he had been informed the guilty plea would automatically encompass a deadly weapon finding. Instead, Petitioner claims he would have elected to have the entire proceedings held before a jury.

In his response to Respondent's answer Petitioner clarifies he is also raising a claim that his constitutional right to a jury was denied or abrogated, where neither counsel, the convicting court, nor the State prosecutor advised him that his entering a guilty plea to the indictment would automatically remove the deadly weapon finding from the jury by the court's instructed verdict.

**D.    Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

**E.    Request for Evidentiary Hearing**

In his response to Respondent's answer Petitioner asserts he was denied an evidentiary hearing by the state habeas court. He concludes he should be afforded some form of fact-finding to resolve the claims before this Court.

Where a habeas petitioner has failed to fully develop the factual basis of his claims in state court, he is precluded from further factual development in federal court unless he can meet the narrow exceptions contained in 28 U.S.C. § 2254(e)(2). Williams v. Taylor, 529 U.S. 420, 430, 120 S. Ct. 1479, 1488 (2000). Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
>   (A) the claim relies on–

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A lack of diligence on the part of an applicant or his counsel in developing the factual basis for a claim constitutes "failure" and is sufficient to trigger the restrictive requirements of this subsection. Williams, 529 U.S. at 432. In this regard, "[d]iligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claim in state court." Id. at 435, 120 S. Ct. 1490. Likewise, a "reasonable attempt" requires that a habeas applicant affirmatively seek an evidentiary hearing in state court in the manner prescribed by state law. Id. at 437, 120 S. Ct. 1490. "Mere requests for evidentiary hearings [in state court] will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000).

In the instant case, petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims. Traverse, at 2-3. Although Petitioner generally requested a hearing in state court in his state habeas application, Ex parte Hinkle, Appl. No. 66,281-01 at 42, under the standard set out above, Petitioner has not shown the necessary diligence to be entitled to a hearing. In state court, Petitioner did not present any affidavits from trial counsel or other witnesses supporting the need for an evidentiary hearing, nor did he demonstrate that affidavits could not be obtained absent an order

or discovery hearing. As such, Petitioner has failed to plead allegations that would entitle him to a hearing under this standard.

## DISCUSSION AND ANALYSIS

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)).    The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.    See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme

Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Involuntary Plea**

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973) (referring to McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441 (1970)).

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the courses of action open to the defendant. Matthew v. Johnson, 201 F.3d 353, 364 (5th Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366 (1985)). When

a court assesses the validity of a guilty plea it looks to all of the relevant circumstances surrounding it.  Matthew, 201 F.3d at 364-365 (citing Brady v. United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469 (1970)).

A defendant pleading guilty must be competent and must have notice of the nature of the charges against him. The plea must be entered voluntarily and not be the product of actual or threatened physical harm or mental coercion overbearing the will of the defendant. Nor can the plea be the result of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  Matthews, 201 F .3d at 365 (citing Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S. Ct. 2253 (1976); Smith v. O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572 (1941); Brady, 397 U.S. at 750, 90 S. Ct. 1463 and Machibroda v. United States, 368 U.S. 487, 493, 82 S. Ct. 510 (1962)).  In addition, the defendant must understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  Matthew, 210 F.3d at 365 (citing Henderson, 426 U.S. at 645, n. 13, 96 S. Ct. 2253; Brady, 397 U.S. at 755, 90 S. Ct. 1463 and Machibroda, 368 U.S. at 493, 82 S. Ct. 510).  Finally, the defendant must have available the advice of competent counsel which acts as a safeguard to ensure that pleas are voluntarily and intelligently made.  Matthew, 210 F.3d at 365 (citing Tollett, 411 U.S. at 267-688, 93 S. Ct. 1602 (1973); Brady, 397 U.S. at 756, 90 S. Ct. 1463; McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441 (1970)).

A plea is intelligent if the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their technical legal effect.  See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995) (citing Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991)). With respect to guilty pleas, the "knowing" requirement that a defendant understand "the

consequences" of a guilty plea means only that the defendant must know the maximum prison term and fine for the offense charged. See James v. Cain, 56 F.3d at 666 (holding that as long as the defendant understands the length of time he might possibly receive, he is fully aware of his plea's consequences); Spinelli v. Collins, 992 F.2d 559, 561 (5th Cir. 1993); United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990); United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990); Barbee v. Ruth, 678 F.2d 634, 635 (5th Cir. 1982), cert. denied, 459 U.S. 867 (1982). It is not necessary that a defendant be advised of all of the "collateral" consequences of his plea. See Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (holding that the Constitution does not require that the state furnish the defendant with information on parole eligibility in order for the defendant's plea to be voluntary); see also United States v. Garcia, 636 F.2d 122 (5th Cir. 1981); United States v. Farias, 459 F.2d 738 (5th Cir. 1972). The Fifth Circuit has found parole eligibility to be a collateral consequence of a plea. Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967), cert. denied, 389 U.S. 899 (1967).

In this case the indictment provided that Petitioner on or about the 29th day of November, 2001, did then and there operate a vehicle in a public place while intoxicated, and by reason of that intoxication by accident and mistake, caused the death of Clinton Hunter by striking Hunter and another vehicle with his motor vehicle, a deadly weapon, which in the manner of its use and intended use was capable of causing death and serious bodily injury. Ex parte Hinkle, Appl. No. 66,281-01 at 2. The record demonstrates Petitioner was admonished by the trial court as to the consequences of his plea, including the range of punishment for the offense charged. Id. at 8, 17. The trial court further admonished Petitioner of his right to remain silent, that he was not required to make a statement and that any statement he made could be used against him, that he had a right to be

confronted with the witnesses against him, and that he had a right to a jury trial. The trial court determined Petitioner was persistent in pleading guilty and concluded he was mentally competent and that his plea was made freely and voluntarily. Id.

    Prior to voir dire, the trial court reiterated:

| | |
|---|---|
| COURT: | Mr. Hinkle, I admonished you, I guess it was about a week ago, about your plea of guilty. And are you still – do you still intend to enter a plea of guilty before the jury? |
| PETITIONER: | Yes, ma'am. |

2 SF 4. Counsel confirmed Petitioner's intention:

| | |
|---|---|
| COUNSEL: | And, Herschel, you're maintaining your plea of guilty understanding that by entering that plea of guilty and the plea of true to the enhancement paragraph that that range of punishment is for a first degree felony from not less than five years, not more than 99 years or life in prison and up to a $10,000.00 fine? You understand that by entering that plea of guilty and true that you are exposing yourself with this jury to that possible punishment issue? |
| PETITIONER: | Yes. |

2 SF 5-6. In fact, because Petitioner indicated prior to voir dire that he would plead guilty, the main issue discussed during voir dire was the range of punishment.

    After a jury was selected, the indictment was read to Petitioner and the jury. Petitioner responded affirmatively that he understood the charges in the indictment. 3 SF 9-10. The trial court advised Petitioner that ordinarily the range of punishment for intoxication manslaughter is not less than two years in prison up to 20 years in prison and up to a fine of $10,000.00. 3 SF 10. The court explained in the event a defendant has been previously and finally convicted of a felony offense, the range of punishment is increased to that of a first degree felony. 3 SF 11. The court further explained, if Petitioner pleaded guilty to the offense of intoxication manslaughter and he pleaded true

13

to the enhancement paragraphs that alleged Petitioner had been previously and finally convicted of two felony offenses, the range of punishment is a period of not less than five years, not more than 99 years to life, and a fine up to $10,000.00. 3 SF 11. Counsel confirmed that Petitioner understood the admonishments, recognized he had certain rights and appreciated the consequences of giving up those rights. 3 SF 11-12. Counsel also opined that Petitioner was presently competent and sane. 3 SF 12. The court found, based upon her observations, that Petitioner was competent and sane. 3 SF 12. Petitioner affirmed that he was pleading guilty freely and voluntarily and that he was pleading guilty because he was guilty and for no other reason. 3 SF 12. He further confirmed that he was pleading true to the enhancement paragraphs because they were true and for no other reason and that his plea of true was voluntarily and freely given. 3 SF 12-13.

On state habeas review the trial court found:

> At his arraignment, the applicant stated that he understood the nature of the charges against him. He was admonished by the Court of the consequences of a guilty plea, including the minimum and maximum punishment provided by law, and he persisted in pleading guilty. He was specifically admonished that if he plead guilty to the instant offense and pled true to the enhancement paragraphs he faced imprisonment for five to 99 years, or life imprisonment. The applicant indicated that he understood this. He indicated that he was pleading guilty freely and voluntarily because he was guilty and for no other reason. The applicant was sentenced within that range of punishment.
>
> The applicant has presented no proof of any plea agreement containing a term related to the deadly weapon finding or his parole eligibility, nor has he presented any evidence that his attorney misled him as to the consequences of his guilty plea.

Ex parte Hinkle, Appl. No. 66,281-01 at 64-65. The trial court concluded Petitioner had not met his burden of showing that his attorney misled him or failed to inform him of the consequences of his plea. Id. at 65. The trial court further concluded that Petitioner had not demonstrated that his trial

counsel rendered ineffective assistance of counsel. Id. The court also concluded that Petitioner had not shown that his guilty plea was involuntary or illegal. Id.

"Solemn declarations in open court carry a strong presumption of verity," and Petitioner has not overcome them. Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). It is clear from the record that Petitioner was properly admonished by the court prior to entry of his guilty plea. It is abundantly plain that his plea was knowingly, freely, and voluntarily made. Petitioner has failed to show that he did not understand the range of punishment for the offense or the consequences of his guilty plea. The law did not require that Petitioner be informed that the jury would be instructed to find that he used a deadly weapon during the commission of the offense or that the deadly weapon finding would prohibit his eligibility for parole for at least 30 years. See Rupert v. Johnson, 79 F. Supp. 2d 680, 707 (W.D. Tex. 1999) (defendant's mere expectation about commutation and parole process "simply no ground for habeas corpus relief"). See also Johnson v. Dees, 581 F.2d 1166, 1167 (5th Cir. 1978) (failure to inform defendant he might be denied time off for good behavior based on seriousness of offense did not render guilty plea involuntary); Trujillo v. United States, 377 F.2d 266 (5th Cir. 1967) (defendant need not be informed, before pleading guilty, that he will not be eligible for parole under the mandatory sentence to be imposed). Accordingly, he has failed to show the state habeas court's rejection of the ground for relief was contrary to, or involved an unreasonable application of, clearly established federal law. This claim, therefore, should be denied.

**C.      Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

15

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

The two-part Strickland test also applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985). In order to demonstrate prejudice in connection with a guilty plea, a

petitioner must show that there is a reasonable probability that but for counsel's errors, the petitioner would not have pled guilty but would have insisted on going to trial. Id. at 59. A petitioner must "affirmatively prove" prejudice. Strickland, 466 at 693, 104 S. Ct. at 2067. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the Strickland test. Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994). A petitioner must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial. Carter v. Collins, 918 F.2d 1198, 1200 (5th Cir. 1990). This assessment depends in part on a prediction of what the outcome of trial might have been. Hill v. Lockhart, 474 U.S. at 56-58, 106 S. Ct. at 369-70.

Petitioner does not allege that counsel misinformed his about his parole eligibility. Rather, he asserts counsel failed to inform him about parole eligibility. As explained above, counsel was not required to inform Petitioner about his parole eligibility, and thus, his performance was not deficient.

Petitioner also alleges counsel was deficient because he failed to prepare a defense for trial. In his state application for habeas corpus relief Petitioner explained, "Approximately ten days prior to the date Applicant's trial was to commence his trial attorney came to visit him at the jail. During the visit, Mr. Mark Westenhover, Applicant's lawyer, stated 'I think about your case every morning when I'm in the shower and on my drive into work, but I have no defense for you against this alleged offense.'" Ex parte Hinkle, Appl. No. 66,281-01 at 45. Petitioner explained with the trial approaching and no defense he succumbed to his trial counsel's request that he enter a plea of guilty. Id. Petitioner stated he understood counsel's advice to include that the jury would then assess his

punishment. Id. In his federal application for habeas corpus relief Petitioner contends he would not have pleaded guilty had trial counsel prepared a defense.

Petitioner does not suggest or prove what defense counsel should or could have brought to trial. The state court records show Petitioner was arrested in his truck at the time and place of the point of impact with Officer Hunter and his patrol car, Officer Hunter died as a result of the high-speed chase and collision that Petitioner caused, Petitioner's truck was qualified as a deadly weapon by one of the accident re-constructionists, and Petitioner's blood/alcohol content was tested to be three times the legal limit. Petitioner confuses his counsel's alleged statements that he could not think of a defense to the charges with a failure to prepare a defense. Given the facts of the case, counsel's statements were unsurprising. It is far from obvious to this Court what viable defense existed to the intoxication manslaughter charge. Further, the state court records make clear that counsel was fully prepared at the punishment phase of trial and had thoroughly investigated Petitioner's case.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**D.     Deadly Weapon Finding**

As mentioned above, the indictment in question provided that Petitioner on or about the 29th day of November, 2001, did then and there operate a vehicle in a public place while intoxicated, and by reason of that intoxication by accident and mistake, caused the death of Clinton Hunter by striking

18

Hunter and another vehicle with his motor vehicle, a deadly weapon, which in the manner of its use and intended use was capable of causing death and serious bodily injury. Ex parte Hinkle, Appl. No. 66,281-01 at 2. Petitioner pleaded guilty to the charge, which included the deadly weapon finding.

On direct appeal, the appellate court explained, "[w]hen a defendant enters a plea of guilty before a jury, no issue of guilt remains and it is proper for the court to instruct the jury to return a verdict of guilty." Hinkle v. State, No. 03-03-00361-CR, 2004 WL 438330 (Tex. App. – Austin, Mar. 11, 2004) (citing Holland v. State, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988)). The court further explained, by pleading guilty to this allegation before the jury, Petitioner removed any question as to whether he used his vehicle as a deadly weapon. Petitioner has failed to show the state court's rejection of the ground for relief was contrary to, or involved an unreasonable application of, clearly established federal law. This claim, therefore, should also be denied.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 4th day of December, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE